IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID BLACK,					No. 3:17-cv-01785-HZ

    Plaintiff,				OPINION & ORDER

  v.

HARTFORD LIFE INSURANCE
COMPANY,

    Defendant.

Megan E. Glor
John C. Shaw
Megan E. Glor, Attorneys at Law, PC
707 NE Knott Street, Suite 101
Portland, OR 97212

    Attorneys for Plaintiff

OPINION & ORDER - 1

Russell S. Buhite
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA 98101

> Attorney for Defendant

HERNÁNDEZ, District Judge:

Before the Court is Plaintiff David Black's Motion to Compel Production [15]. Plaintiff brought this action against Defendant Hartford Life & Accident Insurance Company ("Hartford"), alleging that it wrongfully terminated his long term disability ("LTD") benefits claim in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks a Court order compelling Defendant to produce three categories of documents by responding to Requests for Production 1–3, 6–9, and 12–16. *See* Mot. to Compel 2, ECF 15.

The Motion is GRANTED in part.

## BACKGROUND

Plaintiff was employed by DMX Music as a Lead Customer Service Representative. Compl. ¶¶ 4–8, ECF 1. Plaintiff was diagnosed with Atypical Parkinson's Disease and obtained LTD benefits beginning in December of 2005. *Id.* at ¶¶ 9–11. Plaintiff's LTD policy is insured by Hartford, which is responsible for determining Plaintiff's eligibility for benefits and for paying benefit awards. *Id.* at ¶¶ 1, 8; Glor Decl. Ex. B, at 1, ECF 16. Plaintiff was granted an initial twenty-four months of LTD benefits based on his inability to perform material duties of his "own occupation." Compl. ¶ 12; Glor Decl. Ex. B, at 69. After the twenty-four month period ended, Plaintiff continued to receive benefits under the more stringent "any occupation"

OPINION & ORDER - 2

standard. Compl. at ¶ 13; Glor Decl. Ex. B, at 69. Plaintiff received LTD benefits for approximately nine years under the "any occupation" standard. Glor Decl. Ex. B, at 66–72.

From the outset of Plaintiff's LTD claim, Defendant directed Plaintiff to apply for Social Security Disability Income ("SSDI") benefits. *Id.* at 75–76. Plaintiff applied for SSDI benefits. In 2009, the Social Security Administration ("SSA") determined that he was "unable to perform any work existing in significant numbers in the national economy." *Id.* at 78. SSA determined that Plaintiff was disabled as of February 1, 2006, and it awarded him benefits he should have received since that date. *Id.* Plaintiff's retroactive SSDI benefits award offset Defendant's prior LTD benefit payments to Plaintiff. *Id.* at 81. As a result, Plaintiff's monthly LTD payments were roughly cut in half and Plaintiff paid Defendant $24,780 out of the SSDI award to cover Defendant's overpayment. *Id.* In the seven years following SSA's determination, the nature of Plaintiff's disabling condition was regularly confirmed by physicians and Defendant. *Id.* at 82–97.

On November 20, 2015, Defendant's Special Investigation Unit ("SIU") proactively began investigation Plaintiff's LTD claim based on online information that Plaintiff had started a business. *Id.* at 98. Defendant hired a third-party vendor to conduct surveillance of Plaintiff. *Id.* at 101–105. The video surveillance showed Plaintiff walking with a cane, using public transportation, going to the bank, getting his hair cut, shopping, and carrying groceries. *Id.* Defendant also found an online YouTube video of Plaintiff playing in a band in May of 2014. SIU scheduled an interview with Plaintiff which was conducted on March 17, 2016. *Id.* at 123. Regarding his purported business, Plaintiff explained that he had registered a business but that he never derived any income from it and continued paying to maintain the corporate license to keep alive his hope of someday working again. *Id.* at 142–43. Moreover, Defendant hired neurologist

Dr. Robert Egan, who examined Plaintiff on June 14, 2016. Based on Dr. Egan's examination and review of Defendant's surveillance footage, he concluded that Plaintiff did not have Atypical Parkinson's disease. *Id.* at 156.

On August 31, 2016, Defendant wrote a letter to Plaintiff informing him that his LTD benefits claim had been terminated. *Id.* at 157–69. Plaintiff appealed the decision, proffering additional medical reports and explaining that in the YouTube video, he could clearly be seen sitting the back playing drums, not out front playing guitar. *Id.* at 173–76. Defendant denied Plaintiff's appeal. Plaintiff then filed this lawsuit alleging that Defendant abused its discretion under ERISA when it decided to terminate his LTD benefits claim. Plaintiff filed a Motion to Compel Production, seeking three categories of documents responsive to Plaintiff's first requests for production. Defendant opposes the motion.

**STANDARDS**

Under Rule 26 of the Federal Rules of Civil Procedure, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In ERISA cases, discovery may be limited because the statute's primary goal is to provide inexpensive and expeditious resolution to employee benefits claims. *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993). District courts are generally limited to the administrative record unless a so-called structural conflict of interest exists. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). A conflict of interest exists where the "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metro. Life Ins. Co. v.*

*Glenn*, 554 U.S. 105, 108 (2008). Where this conflict of interest exists, the plaintiff may be entitled to discovery outside of the administrative record to determine the "nature, extent, and effect" the conflict may have had on the decision-making process. *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006)).

## DISCUSSION

Plaintiff seeks production of three categories of documents, the first two he refers to as "conflict" discovery:

1. Documents revealing the financial relationship between Hartford and the vendors/consultants it utilized in this case.

2. Performance evaluations and related documents of key employees who participated in the termination and an organizational chart that includes their assignments.

3. Documents that make the record complete.

Mot. to Compel 2. Each category is based on multiple requests for production that Defendant objected to.

**I. Documents Relating to the Financial Relationship Between Hartford and the Vendors/Consultants it Utilized in This Case**

Plaintiff moves to compel Defendant to produce documents responsive to Requests for Production 12 through 16. *See* Glor Decl. Ex. A, at 8–11. Particularly, Plaintiff contends that information about Defendant's relationships with HUB Enterprises ("HUB"), MES Solutions and/or MES Group ("MES"), and Dr. Egan, is likely to reveal a history of biased claims administration. *See Glenn*, 554 U.S. at 117–118 (stating that a history of biased claims administration "is perhaps of great importance" when considering conflicts of interest).

Defendant hired these vendors to investigate, surveil, and medically examine Plaintiff in order to determine whether his LTD benefits claim should be terminated.

In response, Defendant argues that Plaintiff has not made a specific factual showing of misconduct or bias sufficient to justify discovery of Defendant's financial relationship with its vendors. As a preliminary matter, whether to permit "conflict" discovery is well within the discretion of the Court and the Ninth Circuit has not endorsed imposing a threshold burden of production on Plaintiff before permitting discovery. *Burke*, 544 F.3d at 1028 n.15. In any event, Plaintiff has shown that in other ERISA cases within the Ninth Circuit, Hartford has used HUB and MES to conduct biased investigations. For example, in *Hertz v. Hartford Life & Accessories Insurance Co.*, Hartford hired HUB to conduct surveillance of the plaintiff in that case. 991 F. Supp. 2d 1121, 1127 (D. Nev. 2014). There, the court recognized that Hartford knew its vendors had financial incentives to produce reports that would justify denying benefits. *Id.* at 1135. The district court in *Hertz* granted summary judgment in the plaintiff's favor, concluding that Hartford's conflict of interest improperly motivated its benefits decision. *Id.* at 1143. Similarly, in *Caplan v. CAN Financial Corp.*, the Northern District of California considered Hartford's reliance on a vendor it knew was incentivized to produce biased reports in order to maintain its financial relationship with Hartford. 544 F. Supp. 2d 984, 991–993 (N.D. Cal. 2008). Likewise, a Central District of California court considered Hartford's "well-established relationship" with MES, noting the increase over time in payments and LTD claim referrals from Hartford to MES. *Kurth v. Hartford Life & Acc. Ins. Co.*, 845 F. Supp. 2d 1087, 1096 (C.D. Cal. 2012).

Given that Hartford operates under a conflict of interest and has a history of biased claims administration, the Court exercises its discretion to allow Plaintiff to obtain the discovery

he seeks.[1] The Court is particularly persuaded by the fact that Hartford has used the same vendors in this case as were used in *Hertz* and *Kurth*. Therefore, Defendant is ordered to produce documents responsive to Requests for Production, 12, 13, 14, 15, and 16.

## II. Performance Evaluations and Related Documents of Key Employees Who Participated in the Termination and Organizational Chart that Includes Their Assignments

Next, Plaintiff seeks production of documents relating to the performance and evaluation of six Hartford employees involved in terminating Plaintiff's LTD benefits claim.[2] In other ERISA cases within this Circuit, district courts have permitted this form of "conflict" discovery. Whether or not the performance of the employees involved is measured by reference to their ability to deny or terminate LTD claims directly bears on whether Hartford's conflict of interest biased its decision-making process. In *Hertz*, Hartford's employees were "acutely aware" that Hartford evaluated them on that basis. 991 F. Supp. 2d at 1134. Evidence produced in that case showed that the investigator responsible for terminating Hertz's claim was evaluated based on her ability to close claims. *Id.* Another district court found that Hartford's performance reviews "may reveal a structural incentive for individual claims adjustors to deny disability claims." *Stout v. Hartford Life & Acc. Ins. Co.*, No. 11-6186 CW JSC, 2012 WL 4464605, at *2 (N.D. Cal. Sept. 25, 2012).

---

[1] Defendant also argues that it has mitigated any potential bias by walling off claims decision-makers from appeals decision-makers. *See* Buhite Decl. Ex. B, ECF 20. The Supreme Court has recognized that an administrator's active steps to reduce potential bias lessens the importance a conflict of interest may have when determining whether the administrator abused its discretion. *Glenn*, 554 U.S. 117. For discovery purposes, however, the Court finds that it would be premature to rely on Defendant's walling-off efforts as a basis to preclude Plaintiff from seeking evidence that a conflict of interest exists. The nature, extent, and effect, if any, that the conflict of interest had on the decisionmaking process cannot be properly determined in this case without first examining Defendant's financial relationships with the vendors involved in Plaintiff's claim.

[2] Plaintiff's original Requests for Production 1 & 2 sought documents relating to fourteen employees. *See* Glor Decl. Ex. A, at 3–4. Plaintiff reduced that number to six after the Court held a telephonic hearing on this discovery dispute. *See* Minutes of Proceedings, June 5, 2018, ECF 14; Pl.'s Mot. to Compel 9 (identifying the following employees: Darrin Bishop; William Allen; Carrie Still; Mary Kelly; Robin Rupert; and Jennifer Allen).

Defendant argues that Plaintiff's requests for production are overbroad, not narrowly tailored to the issue of conflict of interest, and intrude on employees' privacy interests. Some courts have denied similar requests on the bases Defendant identified. *See Bartholomew v. Unum Life Ins. Co.*, 579 F. Supp. 2d 1339, 1340–41 (W.D. Wash. 2008) (finding that the plaintiff's discovery request was "little more than a fishing expedition" because there were no allegations of actual conflict of interest); *Duran v. Cisco Sys, Inc.*, 258 F.R.D. 375, 382 (C.D. Cal. 2009) (denying interrogatory requests for employees' background information as overbroad and irrelevant).

Here, Plaintiff's request is proportional with the needs of this case and Plaintiff is entitled to discovery of performance evaluations and other incentive-related documents. Such documents have been used by other courts in similar cases as evidence of a biased decisionmaking process. *See, e.g.*, *Hertz*, 991 F. Supp. 2d at 1134. Further, in contrast with the cases Defendant cites, Plaintiff's requests do not seek generalized background information such as addresses, telephone numbers, employment history, and educational background. *See Duran*, 258 F.R.D. at 382. Rather, Requests for Production 1 and 2 seek the following information regarding those employees involved in terminating his LTD benefits claim: work performance evaluations, changes in compensation and benefits, and basic employment information such as job titles and job duties. *See* Glor Decl. Ex. A, at 3–5. Request for Production 3 merely seeks organizational charts of departments or groups that took any action regarding Plaintiff's claims. *Id.* at 5–6. The Court finds that these requests are narrowly tailored to determine what role Defendant's conflict of interest may have played in the decisionmaking process. The Court is mindful of the employees' privacy interests and grants the motion as to this document category with the caveat

that performance evaluations and other documents containing employees' sensitive information be submitted pursuant to a protective order.

## III. Documents that Make the Record Complete

Plaintiff claims that the administrative record is incomplete. Plaintiff seeks documents responsive to Requests for Production 6–9, 13, 14, and 16. As discussed above, the Court grants Plaintiff's motion as to Requests for Production 13, 14, and 16. The Court turns to Requests for Production 6–9. Request for Production 6 seeks: "All communications, including email communications, by between and/or among Hartford's employees, including by, with or among representatives of SIU, regarding Plaintiff's Claim." Glor Decl. Ex. A, at 6. Plaintiff also requests that Defendant conduct three searches within its computer system and that all Hartford employees who had any involvement in Plaintiff's claim also conduct those searches on their devices. *Id.* at 7.[3] Defendant responds that it has already produced all responsive documents within the claim file. *Id.*

According to Plaintiff, however, the administrative record encompasses a broader range of documents than what Plaintiff's claim file contains. *See Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp. 2d 1198, 1212 n.11 (C.D. Cal. 2004) (noting that the administrative record refers to "the facts known to the administrator or fiduciary, at the time the benefits decision was made"). In *Gaines*, a case also involving Hartford, the district court found that Hartford had presented an incomplete administrative record. *Id.* The plaintiff produced additional

---

[3] Request for Production 7: "Search your computer system, including but not limited to all document storage, claim management and email systems, including computers of all people who had any involvement in Plaintiff's Claim, using the following terms:
      a. 'David' within 2 words of 'Black', including any derivations thereof,
      b. '9001553223' (the claim number You assigned Plaintiff's Claim),
      c. '10944720' (the claim event ID number You assigned Plaintiff's claim)."
Request for Production 8: "Conduct the searches stated in Request 7 on all desktop computers and laptop computers used by all people who had any involvement in Plaintiff's Claim and produce the responsive documents, even if not maintained on Hartford's corporate computers or network."

evidence establishing facts the court deemed were also part of the administrative record. *Id.* The situation here is different. Plaintiff is not asking the Court to include additional evidence in the administrative record that he produced. Defendant has already produced all communications among its employees regarding Plaintiff's LTD claim. Glor Decl. Ex. A, at 6. There is no evidence that any records are missing. The Court will not order Defendant to reproduce documents it represented have already been produced. By extension, the Court will not order Defendant to conduct additional forensic searches of its computers. The searches described in Request for Production 7 seek previously produced documents and those requests are not proportional with the needs of this case. Accordingly, Plaintiff's Motion to Compel is denied regarding the Requests for Production 6–9.

## CONCLUSION

Plaintiff's Motion to Compel [15] is GRANTED regarding Requests for Production 1–3, and 12–16. The Motion is DENIED as to Requests for Production 6–9. The parties are further ordered to submit a stipulated joint protective order consistent with this Opinion & Order regarding Requests for Production 1 & 2.

Dated this __14__ day of __August__, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge